UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KATHLEEN MUKAMAL, THEODORE MUKAMAL
and ANDREW MUKAMAL, individually and
derivatively on behalf of ONEXXX PRODUCTION &
EXPLORATION CORPORATION and CHARTIERS
NATURAL GAS CO., INC.,

Plaintiffs,

- against -

ONEXXX PRODUCTION & EXPLORATION
CORPORATION, CHARTIERS NATURAL GAS CO.,
INC., ANNE WEIR BENSEN, KIMBERLEY
CROWELL, and SANDRA L. BITNER,

Defendant.
------------------------------------------------------------------X

Case No:

**COMPLAINT**

Plaintiffs Kathleen Mukamal ("Kathleen"), Theodore Mukamal ("Theodore") and Andrew Mukamal ("Andrew" and together with Kathleen and Theodore, "Plaintiffs" or the "Mukamal Family"), by and through their attorneys, Westerman Ball Ederer Miller Zucker & Sharfstein, LLP, as and for their complaint and shareholder direct and derivative complaint, respectfully state as follows:

**INTRODUCTION**

1. Defendants Onexxx Production & Exploration Corporation ("Onexxx") and Chartier Natural Gas Co., Inc. ("Chartier" and, together with Onexxx, the "Corporate Defendants") are closely held corporations involved in the oil and gas industry.

2. The Corporate Defendants were formed in 1980 by Roger Bensen ("Bensen"). Since Bensen's death in 2022, the Corporate Defendants have been run by his daughter, defendant Kimberly Crowell ("Crowell").

3. Between 1980 and 1981, Steven Mukamal ("Steven") purchased shares in Defendants for more than $85,000. Steven passed away in 2017, and is survived by his wife, Kathleen, and his children, Theodore and Andrew.

4. Upon information and belief, while the Corporate Defendants were largely not profitable from 1980 through 2016, since 2016 the Corporate Defendants have earned millions of dollars relating to drilling rights.

5. Rather than making distributions or dividends to the long-time, patient shareholders of the Corporate Defendants, of which, upon information and belief, there are only eight, Bensen (and upon Bensen's death, Crowell) made the decision that all profits would be maintained by the Corporate Defendants in an investment account managed by Crowell consisting of stocks and bonds.

6. During the period since the Corporate Defendants became highly profitable, while not returning a single dollar of value to the minority shareholders of the Corporate Defendants, upon information and belief, Bensen, and upon his death, Crowell, in violation of their fiduciary duties, have been paying themselves grossly excessive salaries and bonuses.

7. Worse, when Theodore implored Crowell to issue a dividend to the shareholders of the Corporate Defendants, or to buy out the Mukamal Family's investment, Crowell stated that (a) she had no intention of ever issuing a dividend or returning value to minority shareholders in any way; and (b) she manages the companies, including the investment account that was created to house the companies' profits, as a full time job.

8. This action presents a classic case of minority shareholder oppression. Rather than acting in the best interests of the shareholders of the Corporate Defendants, Crowell (like her father before her), is treating the Corporate Defendants as her personal piggy banks. For more than 45

years, Bensen, and now Crowell, have no distributed a single dollar of the profits of the Corporate Defendants. Since 2016, the Corporate Defendants have generated annual operating profits of several million dollars.

9. Steven made an investment in a natural gas company. He did so with the reasonable expectation that if the companies were successful, he would make a profit. After over four decades, when the companies were finally *highly* profitable, rather than returning any share of the profits to Steven, Bensen and Crowell decided to treat the company as a financial advisory company, maintaining all of the company's profits in an investment account having nothing at all to do with the company's natural gas business, solely so as to justify paying themselves inflated management fees. Meanwhile, the Mukamal Family (which holds Steven's shares in the Corporate Defendants) have not received a single dollar in 45 years.

## PARTIES

10. Plaintiff Kathleen Mukamal is an individual who primarily resides in the State of Florida. Kathleen currently owns 117 shares of Onexxx and 83 shares of Chartiers.

11. Plaintiff Theodore Mukamal is an individual with a permanent residence in the State of New York. Theodore currently owns 15 shares of Onexxx and 11 shares of Chartiers.

12. Plaintiff Andrew Mukamal is an individual who resides in the State of California. Andrew currently owns 15 shares of Onexxx and 11 shares of Chartiers.

13. Upon information and belief, defendant Onexxx Production & Exploration Corporation is a corporation duly formed and existing under the laws of the State of Delaware, with its principal place of business at 1001 Fairway Oaks Drive, Jeannette, Pennsylvania 15644.

14. Upon information and belief, defendant Chartiers Natural Gas Co., Inc. is a domestic corporation duly formed and existing under the laws of the State of Pennsylvania, with its principal place of business at 1001 Fairway Oaks Drive, Jeannette, Pennsylvania 15644.

15. Upon information and belief, defendant Anne Weir Bensen ("Anne") is an individual who resides in the State of Connecticut. Upon information and belief, Anne is the surviving spouse of Bensen and a member of the Boards of Directors of the Corporate Defendants.

16. Upon information and belief, defendant Kimberley Crowell, is an individual who resides in the State of Massachusetts. Crowell is Bensen's daughter. Since 2022, Crowell has functioned as the President of the Corporate Defendants and a member of their Boards of Directors.

17. Upon information and belief, Defendant Sandra L. Bitner ("Bitner"), is an individual who resides in the State of Pennsylvania. Upon information and belief, Bitner has served as the Vice President of the Corporate Defendants for many years and is a member of the Boards of Directors of the Corporate Defendants.

## JURISDICTION AND VENUE

18. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity jurisdiction of citizenship between Plaintiffs and Defendants, and because the matter at issue exceeds $75,000, exclusive of interest and costs.

19. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that the wrongs averred herein took place in this district.

## STATEMENT OF FACTS

20. In 1980, Bensen founded the Corporate Defendants, Onexxx and Chartiers.

21. Prior to forming the Corporate Defendants, Bensen had graduated from Harvard Business School and had a career in finance.

22. The Corporate Defendants are involved in the natural gas industry.

23. Since their formation, the Corporate Defendants have owned and maintained approximately one hundred oil wells.

24. Between 1980 and 1981, Steven Mukamal purchases shares of the Corporate Defendants from three existing shareholders: Robert Hogue, Gerald Handlan and Stanley Cooper.

25. In connection with that purchase, Steven paid $25,007 to each of the three above-listed individuals and, in exchange, each individual transferred to Steven 35 shares of Onexxx and 35 shares of Chartiers. Thus, after completion of his purchase, Steven owned 105 shares in each of the Corporate Defendants for a total investment price of $75,021.

26. In 1981, after discussions with Bensen, Steven invested an additional $10,500 directly with the Corporate Defendants, which resulted in the purchase of an additional 42 shares of Onexxx.

27. Unfortunately, in 2014, Steven became very ill and in 2017 he passed away. Steven was survived by his wife Kathleen and his children, Theodore and Andrew.

28. Steven's shares of the Corporate Defendants are currently owned by Kathleen, Theodore and Andrew.

29. In total, the Mukamal Family owns approximately 10.28% of the shares of the Corporate Defendants.

30. Other than the named individual defendants, the Mukamal Family is collectively the largest minority shareholder of the Corporate Defendants.

31. Upon information and belief, from their formation through 2016, the Corporate Defendants were largely not profitable.

32. During this time period, the Corporate Defendants did not pay any dividends or make any distributions to shareholders.

33. During this timeframe, Bensen, as manager of the Corporate Defendants, failed to issue annual reports for either of the Corporate Defendants.

34. During this timeframe, Bensen, as manager of the Corporate Defendants, failed to hold annual meetings for either of the Corporate Defendants.

35. During this timeframe, Steven and the Mukamal Family were not provided with regular or timely information concerning the Corporate Defendants.

36. Upon information and belief, all profits generated during time timeframe by the Corporate Defendants were held in an investment portfolio that was managed by Bensen until his death in 2022. This was not disclosed to the Steven or the Mukamal Family until Theodore requested information in 2024.

37. While having previously not generated significant profits, beginning in the year 2016, the Corporate Defendants began to generate millions of dollars in profits in connection with certain drilling rights.

38. From 2016 through 2018, Theodore, on behalf of the Mukamal Family, had a number of discussions with Bensen in which Theodore requested that Bensen distribute to shareholders a portion of the profits that had built up so as to return value to longtime shareholders.

39. During a 2018 discussion, Bensen, for the first time, disclosed to Theodore that rather than distributing profits annually over the preceding four decades, Bensen directed those funds to be held in an investment account for which Bensen played "stock picker" with company profits. At that time, Bensen indicated that this investment account had in excess of $5 million in funds.

40. Bensen also conceded during this discussion that the funds were not being used for any business purpose relating to the company's oil and gas business, but rather that he was acting as an investor with the funds.

41. Upon information and belief, from at least 2016 forward, Bensen was paying himself and/or members of his family exorbitant compensation from the Corporate Defendants. For example, in fiscal year ending April 30, 2022, Onexxx paid out over $1.8 million in payroll despite having six or fewer employees.

42. Upon information and belief, Bensen receive additional compensation to act as a "stock picker" and manager of the "investment account" that he had created rather than distributing profits to the shareholders of the Corporate Defendants.

43. In May of 2022, Bensen passed away.

44. Despite the fact that the Mukamal Family are collectively the largest shareholders in the Corporate Defendants outside of the individual defendants in this case, Defendants never even disclosed to the Mukamal Family that Bensen had died. Rather, Theodore discovered Bensen's passing on the internet when searching for information about the Corporate Defendants.

45. Upon Bensen's death, Crowell assumed the role of President and manager of the Corporate Defendants.

46. Upon information and belief, Crowell, like her father, Bensen, has directed the Corporate Defendants to pay her compensation grossly in excess of industry standards for small non-public companies.

47. After Crowell assumed control of the Corporate Defendants, she continued her father's improper practice of refusing to distribute profits to shareholders and, instead directing those funds into an "investment account."

48. Upon information and belief, Crowell is paid additional compensation from the Corporate Defendants to manage this investment account.

49. Throughout the fall of 2024, Theodore engaged Crowell in a series of discussions during which Theodore implored Crowell to either issue a dividend to shareholders, consider selling the Corporate Defendants, or buy out Plaintiffs' interests in the Corporate Defendants so as to return shareholder value to Plaintiffs.

50. During these discussions, Crowell informed Theodore that she had no intention of ever issuing a dividend, selling the companies or buying out Plaintiffs.

51. Crowell also informed Theodore that she manages both the Corporate Defendants and their investment account as a full time position, and that she intends to do so for the next decade.

52. When Steven invested in the Corporate Defendants on behalf of the Mukamal Family, he did so with the reasonable expectation that if the companies were successful, he would either receive a share of the profits, or that the companies would be sold at a profit. Now, after 45 years, with the company finally immensely profitable, Defendants are refusing to distribute profits or otherwise return shareholder value to Plaintiffs.

53. Plaintiffs have made numerous demands that the Corporate Defendants issue dividends or make distributions to return shareholder value to shareholders. Those demands have been rebuffed.

54. Plaintiffs have made numerous demands that Defendants buy out Plaintiffs' interest in the Corporate Defendants. Those demands have been rebuffed.

55. Plaintiffs have made numerous demands that the Corporate Defendants be sold, so as to return value to investors. Those demands have been rebuffed.

56. Defendants are putting their own interests in continuing to be employed (at, upon information and belief, compensation amounts grossly in excess of that which is appropriate) ahead of those to whom they have fiduciary duties, namely the minority shareholders of the Corporate Defendants.

57. Upon information and belief, the investment accounts of the Corporate Defendants have in excess of $19,735,979 in funds under management as of February 28, 2025, most of which is held in undiversified bonds.

58. Upon information and belief, the value of the Corporate Defendants is in excess of $40 million.

59. On March 24, 2025, Onexxx made a share repurchase offer to all non-family shareholders including Plaintiffs offering $11,520 per share of Onexxx or approximately $1.7 million to Plaintiffs.

60. Plaintiffs sought more information and sought to negotiate in good faith a fair and equitable resolution to a 45-year-old business relationship between the families. Those good faith efforts have been rebuffed.

61. Onexxx's offer was based on a valuation by a firm that Defendants selected and on non-audited financial statements. Defendants did not offer Plaintiffs the information or time necessary to obtain an independent valuation on audited financial statements, and Onexxx's share repurchase offer expired on April 21, 2025, as it was not accepted by Plaintiffs.

62. The repurchase offer's underlying valuation detailed in numerous points how actions by the Defendants had destroyed shareholder value and thus led to an artificially low valuation.

63. For example, the valuation report stated that "According to Onexxx representatives, Onexxx does not plan to make distributions to shareholders for the foreseeable future," and that given that Onexxx has never distributed income to shareholder as a normal company would nor does it intend to, the valuation firm was unable to apply the standard Income Approach to valuation.

64. The valuation report also stated that "the lower the level of distributions from the entity, the higher the discount," and that "The subjects of the transactions contained in the Stout Study generally do not pay dividends. Accordingly, to the extent the subject company pays consistent, material distributions, this attribute has a downward impact on the lack of marketability discount, all else held constant."

65. Moreover, the valuation firm applied a higher level of discount given that Defendants were hoarding the shareholders profits in an undiversified portfolio consisting almost entirely of bonds: "The closed-end funds hold diversified investment portfolios. The Company does not hold a diversified portfolio. This factor suggests that a higher discount for lack of control is appropriate."

## AS AND FOR A FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duty)

66. Plaintiffs repeat and reallege each of the foregoing paragraphs as though fully set forth herein.

67. Defendants owed a fiduciary duty to Plaintiffs as minority shareholders of the Corporate Defendants.

68. As minority shareholders, Plaintiffs reposed a special confidence in Defendants.

69. Defendants breached their fiduciary duties to Plaintiffs by:

    a. failing and refusing to pay any dividends or make any distributions to shareholders;

    b. failing to issue annual reports and hold annual meetings for either of the Corporate Defendants;

    c. failing to provide Plaintiffs with regular or timely information concerning the Corporate Defendants;

    d. investing the Corporate Defendants' profits in an investment account that was used for non-business related purposes; and

    e. paying themselves and/or members of their family exorbitant compensation from the Corporate Defendants.

70. Defendant negligently or intentionally failed to act in good faith and solely for the benefit of Plaintiffs in all matters for which they were employed.

71. As a direct and proximate result of Defendants' conduct, Plaintiffs have sustained damages in an amount to be proven at trial.

72. In addition, Crowell and Bitner should be required to provide Plaintiffs with an accounting of all revenue received, expenses paid, job costs, company correspondence, and all actions taken by each of the Corporate Defendants from 2016 (when they became profitable) to date.

## AND FOR A SECOND CAUSE OF ACTION

## (Appointment of Receiver Pursuant to 15 Pa.C.S.A. § 1767(a)(2))

73. Plaintiffs repeat and reallege each of the foregoing paragraphs as though fully set forth herein.

74. Corporate Defendants are closely held corporations.

75. Crowell is the director and/or in control of the Corporate Defendants.

76. Plaintiffs are one or more holders or owners of approximately 10.28% of the Corporate Defendants.

77. Crowell has acted illegally, oppressively, and/or fraudulently towards Plaintiffs in their capacities as shareholders.

78. As a direct and proximate result of Defendants' conduct, Plaintiffs have sustained damages in an amount to be proven at trial.

79. Absent the appointment of a receiver, Defendants will continue to improperly manage the company, waste corporate assets in the form of paying themselves excessive compensation and otherwise continue to harm the minority shareholders of the Corporate Defendants.

80. Defendants have already demonstrated that they cannot be trusted to safeguard the interests of the minority shareholders of the Corporate Defendants.

81. As a direct and proximate result of Defendants' conduct, Plaintiffs are entitled to the appointment of a receiver, pursuant to 15 Pa.C.S.A. § 1767(a)(2).

82. Absent the appointment of a receiver, both the Corporate Defendants and Plaintiffs will continue to suffer harm based upon Crowell's illegal, oppressive, and/or fraudulent conduct.

### AND FOR A THIRD CAUSE OF ACTION

### (Appointment of Receiver Pursuant to 15 Pa.C.S.A. § 1984)

83. Plaintiffs repeat and reallege each of the foregoing paragraphs as though fully set forth herein.

84. In the alternative, for the reasons alleged above, a receiver pendente lite should be appointed pursuant to 15 Pa.S.C.A. § 1984 if a receiver is not appointed pursuant to 15 Pa.S.C.A.

§ 1767(a)(2).

85. As a direct and proximate result of Defendants' conduct, Plaintiffs are entitled to the appointment of a receiver pendente lite, pursuant to 15 Pa.S.C.A. § 1984.

86. Absent the appointment of a receiver pendente lite, both the Corporate Defendants and Plaintiffs will continue to suffer harm based upon Crowell's illegal, oppressive, and/or fraudulent conduct.

## AND FOR AN FOURTH CAUSE OF ACTION

### (Removal of Directors Pursuant to 15 Pa.C.S.A. § 1726(c))

87. Plaintiffs repeat and reallege each of the foregoing paragraphs as though fully set forth herein.

88. Crowell, Anne and Bitner have demonstrated an unwillingness to manage the affairs of the Corporate Defendants in a manner that safeguards the interests of all shareholders, including the minority shareholders.

89. Crowell, Anne and Bitner have, for decades, allowed Bensen, and now Crowell, to receive excess compensation, horde company profits in an investment account having nothing to do with the oil and gas business of the Corporate Defendants and subjugate the interests of minority shareholders to their own interests.

90. As a result of Defendants' illegal and oppressive conduct, gross abuses of discretion, and fraudulent and dishonest acts, Crowell, Anne and Bitner must be removed as directors of the Corporate Defendants pursuant to 15 Pa.S.C.A. § 1726(c).

91. As a direct and proximate result of Defendants' conduct, Plaintiffs are entitled to an order removing Crowell and Bitner as directors of the Corporate Defendants, pursuant to 15 Pa.S.C.A. § 1726(c).

92. Absent the removal of Crowell and Bitner, both the Corporate Defendants and Plaintiffs will continue to suffer harm based upon Crowell's illegal and oppressive conduct, gross abuses of discretion, and fraudulent and dishonest conduct.

### AND FOR A FIFTH CAUSE OF ACTION

### (Involuntary Winding Up and Dissolution Pursuant to 15 Pa.C.S.A. § 1981)

93. Plaintiffs repeat and reallege each of the foregoing paragraphs as though fully set forth herein.

94. As alleged above, Defendants are and were in control of the Corporate Defendants and have acted illegally, oppressively, and fraudulently towards Plaintiffs as minority shareholders of the Corporate Defendants.

95. As a result of Defendants' conduct, the minority shareholders of the Corporate Defendants have been oppressed and have had their reasonable expectations frustrated.

96. It is in the best interests of the shareholders that the Corporate Defendants be wound up and dissolved.

97. Plaintiffs have demanded that if Crowell will not issue dividends to shareholders, that Crowell either sell or liquidate the Corporate Defendants. That demand has been rebuffed.

98. As a direct and proximate result of Defendants' conduct, Plaintiffs are entitled to an order dissolving each of the Corporate Defendants, pursuant to 15 Pa.S.C.A. § 1981.

### AND FOR A SIXTH CAUSE OF ACTION

### (Failure to Declare Dividend)

99. Plaintiffs repeat and reallege each of the foregoing paragraphs as though fully set forth herein.

100. Upon information and belief, the operating profit of the Corporate Defendants and

the net profits after reserves for taxes for each of the years of 2016 through the present, during which Plaintiffs were shareholders, resulted in quarterly and yearly surpluses.

101. Based upon the financial condition of the Corporate Defendants, it would have been reasonable and prudent for Defendants to declare dividends for shareholders during those years.

102. Defendants, however, acted arbitrarily and capriciously by failing to declare a dividend in any of those years.

103. Defendants engaged in this arbitrary and capricious conduct without regard to, and to the detriment of, the interests of Plaintiffs and other minority shareholders.

104. The refusal of the Defendants to pay dividends has harmed Plaintiffs.

105. The refusal of the Defendants to pay dividends has frustrated the purpose behind Plaintiffs' investment, namely, profits and/or a return of investment capital.

106. Accordingly, Plaintiffs are entitled to an order directing the Defendants to pay out dividends for the years of 2016 through the present, for an amount to be determined at trial.

**WHEREFORE,** Plaintiffs respectfully demand judgment as follows:

(a) on the first cause of action, for: (i) a legal accounting of the Corporate Defendants from 2016 to date and access to the corporate documents, pursuant to 15 Pa.S.C.A. § 1201; (ii) an equitable accounting of the Corporate Defendants from 2016 to date and access to the corporate documents; and (iii) damages against Defendants in an amount to be determined at trial;

(b) on the second cause of action, for the appointment of a receiver, pursuant to 15 Pa.C.S.A. § 1767(a)(2);

(c) on the third cause of action, for the appointment of a receiver pendente lite, pursuant to 15 Pa.S.C.A. § 1984;

(d) on the fourth cause of action, for an order removing Crowell and Bitner as directors of the Corporate Defendants, pursuant to 15 Pa.S.C.A. § 1726(c);

(e) on the fifth cause of action, for an order dissolving each of the Corporate Defendants, pursuant to 15 Pa.S.C.A. § 1981; and

(f) on the sixth cause of action, for damages against Defendant in an amount to be determined at trial;

(g) on all causes of action, for an award of the costs, disbursements, legal fees, and other expenses incurred by Plaintiffs, together with such other and further relief as the Court deems just and proper.

Dated: Uniondale, New York
April 24, 2025

WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP

By:_____
Andrew S. Lewner, Esq.
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200
alewner@westermanllp.com
*Attorneys for Plaintiffs*

To: Onexxx Production & Exploration Corporation
1001 Fairway Oaks Drive
Jeannette, Pennsylvania 15644

Chartiers Natural Gas Co., Inc.
1001 Fairway Oaks Drive
Jeannette, Pennsylvania 15644

Anne Weir Bensen
69 Dandy Drive
Cos Cob, Connecticut 06807

Kimberley Crowell
16 Elm Street
Dennis, Massachusetts 02638

Sandra L. Bitner
1001 Fairway Oaks Drive
Jeannette, PA 15644

*03185239*